**Yale E. KEY, Appellant,**

v.

**W. T. GRANT COMPANY, Appellee.**

No. 5943.

Court of Civil Appeals of Texas.

El Paso.

May 22, 1968.

Rehearing Denied July 3, 1968.
Reversed Oct. 23, 1968.

Stubbeman, McRae, Sealy & Laughlin, F. H. Pannill, Midland, for appellant.

Turpin, Smith, Dyer, Hardie & Harman, Max N. Osborn, Lawrence L. Fuller, Midland, for appellee.

## OPINION

CLAYTON, Justice.

Appellant, Yale E. Key, plaintiff below, filed suit against appellee, W. T. Grant Company, to terminate a lease between appellant, as landlord by assignment, and Grant, as tenant, covering a store building and land in Midland, Texas. Grant filed a separate suit against appellant to recover for alleged cost of work done to the building, claimed to be due it under the lease. These causes were consolidated wherein appellant Key appeared as plaintiff and cross-defendant, and Grant appeared as defendant and cross-plaintiff on its cross-action. After a jury trial on special issues the trial court entered judgment denying Key any relief and awarding Grant judgment for $11,110.65 plus interest, on its cross-action. From such judgment this appeal is taken.

As to work on the leased premises the following lease provisions are applicable (emphasis supplied). Paragraph 6(a):

"The Tenant *at its own expense* may from time to time during the term of the lease make any *alterations, additions and improvements* in, on and to the demised premises which it may deem necessary or desirable but it shall make them in a good and workmanlike manner and in accordance with all valid municipal and state requirements applicable thereto."

Under paragraph 10 thereof it is provided:

"The Tenant further shall make all *repairs* and *replacements made necessary by its negligence* and all repairs and replacements of plate glass but in no event shall the Tenant be required to make any *repairs and replacements which may be made necessary as a result of damage or destruction by fire, the elements or casualty.*"

A further provision of paragraph 10 is as follows:

"The Landlord shall promptly make all *repairs* and *replacements* (other than those herein required to be made by the Tenant) which may be *necessary to maintain the demised premises in a safe, dry and tenantable condition and in good order and repair.*"

Paragraph 17(b) provides:

"The Tenant may perform any obligation of the Landlord should the Landlord fail to do so, promptly after notice of default and the Tenant *may, but need not, make any replacements and repairs of an urgent nature required to be made by the Landlord* without first notifying the Landlord. The Landlord shall reimburse the Tenant for any expenditure thus incurred with interest at six per cent (6%) per annum."

Furthermore, in paragraph 18, there is set out:

"The Landlord agrees to indemnify and *hold the Tenant harmless* from and against all loss, damage or injury to the demised premises * * * or by any *failure on the part of the Landlord to make any of the repairs herein agreed to be made by the Landlord,* and also from

and against all reasonable expense incurred by the Tenant in connection therewith."

Fifty special issues were submitted to the jury, which special issues will be discussed as they appear relevant to points of error presented to us.

Point of Error No. One reads as follows:

"THE DISTRICT COURT ERRED IN OVERRULING AND DENYING APPELLANT'S MOTION TO DISREGARD THE ANSWERS TO CERTAIN SPECIAL ISSUES RETURNED BY THE JURY AND IN FAILING TO RENDER JUDGMENT FOR APPELLANT ON APPELLEE'S CROSS-ACTION, OR IN THE ALTERNATIVE, FAILING TO DECLARE A MISTRIAL, BECAUSE OF FATAL CONFLICT IN THE ANSWERS OF THE JURY TO THE SPECIAL ISSUES, BECAUSE THE JURY FOUND THAT CERTAIN ITEMS OF WORK WERE 'REPAIRS AND REPLACEMENTS' WHICH FINDINGS SUPPORTED A JUDGMENT FOR APPELLEE, AND ALSO FOUND THAT THE SAME WERE 'ALTERATIONS' OR 'ADDITIONS' OR 'IMPROVEMENTS', WHICH FINDINGS SUPPORTED A JUDGMENT FOR APPELLANT."

Appellant calls our attention to his Motion to Disregard the Answers to Certain Special Issues where, in paragraph 12 he states:

"The Court should disregard the answer to Special Issue No. 7 claiming that the work done on the ramp constituted repairs and replacements because the same is in conflict with the answers to Special Issues 10 and 12 finding such work to be alterations or improvements."

■ The appellant has cited and paraphrased numerous cases which establish when a jury's findings are fatally in conflict, such as in Little Rock Furniture Manufacturing Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, and Siratt v. Worth Construction Co., 154 Tex. 84, 273 S.W.2d 615, to the effect that "The test laid down in these cases to be applied by the courts is whether an answer to one special issue establishes a cause of action or defense and an answer to another special issue destroys the same cause of action or defense." As applied to the case at hand the "repairs and replacements" could be those referred to in the first part of lease paragraph 10 when the expense might be on the tenant, or the latter part of paragraph 10 providing for repairs and replacements to "maintain the demised premises in a safe, dry and tenantable condition and in good order and repair" at the expense of the landlord. Since the jury found the latter condition to be true in answer to Special Issue No. 8, we come to the conclusion that the cost of such improvements would be at the expense of the landlord. This conclusion is further augmented by the jury's later finding, No. 38, with regard to architects employed by Grant in connection with the "repair work" as being necessary to "place the premises in a safe, dry and tenantable condition and in good order and repair."

■ On the other hand, the jury's findings on Issues 10 and 12 is that the work done on the ramp was in the nature of "alterations" and "improvements" which, under the lease provision 6(a) must be done at the tenant's own expense. Thus, the answer to Special Issue No. 7 established cross-plaintiff's claim in its cross-action, while the answers to Special Issues 10 and 12 destroy it and establishes cross-defendant Key's defense to the cross-action. Under the authorities cited and paraphrased by appellant we find here a fatal conflict in the jury's findings.

The same considerations apply to the conflict between the answers to Special Issues 13 and 14, finding that the work done on the exterior walls of the store were "repairs and replacements * * * necessary to maintain the premises in a safe, dry and tenantable condition", and the answers to Special Issues 17 and 18 finding this

work to be "improvements" and "alterations".

We find a further conflict of the answer to Special Issues 19 and 20, that work on the roof of the building was "repairs and replacements" to keep the premises in a safe, dry condition, etc., as compared to the answers to Special Issues 23 and 24 that such work was in the nature of "additions" and "improvements".

This also refers to the answers to Special Issues 25 and 26 which found that Grant made "repairs and replacements" to the outside canopies of the store to maintain the premises in a safe, dry condition, etc., and the answer to Special Issue No. 30 that such was an "improvement".

The same conflict occurs between the answers to Special Issues 40 and 41, that work on the basement was "repairs and replacements" to maintain the premises in a safe, dry condition, etc., and the answer to Special Issue No. 43 that such work was an "improvement".

The confusing state of this record is further compounded by the jury's answer to Special Issue No. 6, that the "remodeling" done by Grant did not constitute a "material alteration" of the building, and the answer to Special Issue No. 50 that "such repairs and replacements, if any, done by W. T. Grant Company, did maintain the premises in a safe, dry, and tenantable condition and in good order and repair."

Under our view of this case, it is impossible to determine just what amount of the architects' fees are properly to be charged to either party, and this must be determined after what we believe to be conflicts in the verdict have been disposed of on a new trial. We find it necessary to reverse and remand the trial court's judgment for a new trial.

With this disposition of the case it is not necessary to further discuss appellant's Points Two and Three, since they have been touched on in the foregoing.

Reversed and remanded.